IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
AUG 1 1 2005

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

v.

ANDREW J. HARGRETT, JR.,

　　　　　Defendant.

Case No. 04 C 2433

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff United States of America seeks payment from Defendant Andrew J. Hargrett, Jr. on an outstanding, government-insured Health Education Assistance Loan (hereinafter "HEAL loan" or the "loan") made by a private lender and assigned to the United States pursuant to 42 U.S.C. §§ 292f-p. Before the Court is the Plaintiff's Motion for Summary Judgment, which is **granted**.

### I. LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c). In deciding a motion for summary judgment, the court "review[s] the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." Vanasco v.

*Nat'l-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *See LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997). When the opposing party cannot demonstrate a genuine issue of material fact, summary judgment for the moving party is appropriate. FED. R. CIV. PROC. 56(c).

## II. **DISCUSSION**

On March 25, 2005, the Court denied Plaintiff's motion for judgment on the pleadings because an outstanding question of material fact remained. Defendant asserted that he was "totally and permanently disabled," which halts any collection attempt and is the basis for a HEAL loan discharge. *See* 42 C.F.R. § 60.39(b). Based on the parties' submissions, the Court held that under Section 60.39(b)(3) of the Code of Federal Regulations (hereinafter the "CFR section"), the Secretary of the Department of Health and Human Services ("HHS") had not determined whether "the borrower is totally and permanently disabled," thereby precluding judgment.

The case stems from a 1986 HEAL loan that Hargrett received for $4,000. (Pl. 56.1 St., Exh. B). At that time, Defendant executed a promissory note to repay the loan. (*Id.*) From April 1994 to April 2001, Hargrett received deferments and forbearance of loan repayment with payments scheduled to begin in May 2001. (*Id.*,

Exh. A). Hargrett has not made any payments on the loan. (*Id.*
¶ 21, Exh. 3). As of May 3, 2005, including principal and accrued
interest, the balance was $16,821.88. (*Id.* ¶ 22, Exh. 3).

Pursuant to CFR § 60.40, HHS sent Hargrett a letter dated
December 12, 2001 notifying him of his default on the loan. (*Id.*,
Exh. A). In October 2001, HHS became the promissory note's holder
through assignment after it paid the original lender's claim.
(*Id.*) From December 2001 to June 2003, HHS unsuccessfully
attempted to formalize a repayment agreement with Hargrett. (*Id.*)
Two years after HHS began their repayment procedures, Hargrett sent
a letter to HHS dated July 9, 2003, claiming that he was entitled
to a discharge of his HEAL loan due to a permanent mental
disability. (*Id.*)

Under federal law, total and permanent disability is one of
only three events that can form the basis for discharge of HEAL
loan. 42 C.F.R. §§ 60.8(a)(10), (b)(6). A debtor's HEAL loan will
be discharged due to total disability if "the borrower is found to
be permanently and totally disabled on recommendation of the holder
of the loan and as supported by whatever medical certification the
Secretary [of HHS] may require." § 60.39(b)(1); *see also* 42 U.S.C.
§ 292m. The CFR defines "total and permanent disability" as being
"unable to engage in any substantial gainful activity because of a
medically determinable impairment, which the Secretary [of HHS]

expects to continue for a long and indefinite period of time or to result in death." 42 C.F.R. § 60.39(b)(1).

HHS has its own policies regarding the specifics of HEAL loan discharge requests, which are contained in HEAL Policy Memoranda L-1995-10, L-1995-11, L-1996-8, L-1998-13, and L-2003-7 (said memoranda are accessible to the public on HHS's website: *http://bhpr.hrsa.gov/dhcdd/heal_policy/*). To be discharged due to a disability, HHS policy requires that: (1) the debtor must inform the HEAL lender/holder that he or she is disabled and request a discharge; (2) the lender/holder must forward to HHS the debtor's request for discharge based on disability and stay collection activities; (3) the lender/holder must request in writing that the debtor complete and return the Physician's Certification of Borrower's Total and Permanent Disability ("Disability Form") *in addition to* providing supporting documentation within sixty days from the date of the letter; and (4) upon receiving the disability documentation from the debtor, the lender/holder must send the same to HHS for review. (Pl. 56.1 St., Exh. 3). In the event that the debtor does *not* respond with supporting documentation within sixty days, collection activity must resume. (*Id.* (HHS Policy L-1995-10)). If the lender/holder receives the Disability Form and other documentation, which is facially insufficient either in content or in timing, then HHS will attempt to get additional information. (*Id.*) The debtor then will be given an additional thirty days to

- 4 -

provide the information requested by HHS. If HHS has enough documented information to make a formal determination concerning the debtor's status, then all collection activities must be suspended until HHS renders the decision. (*Id.*)

After Hargrett sent a letter dated July 9, 2003 notifying HHS of his request for discharge due to disability, HHS suspended collection activity and sent Hargrett a response letter dated July 15, 2003 (the "Instruction Letter"). The Instruction Letter outlined the steps and documentation necessary to discharge his HEAL loan. (*Id.*, Exh. J). It stated that "[t]o be considered for debt discharge, you [Hargrett] must complete the enclosed forms [the Disability Form] *and* provide additional documentation within 60 days from the date of this letter." (*Id.*) Thus, without the Disability Form and some supporting documentation, the HHS panel of experts could not consider Hargrett's request for debt discharge due to disability. According to HHS, and without contrary evidence, Hargrett did not return the Disability Form, nor did he provide any documentation within sixty days. Thereafter, HHS resumed its collection activities. (*See id.*, Exh. H).

In an undated letter received by HHS on April 23, 2004, approximately 240 days after HHS requested further information, Hargrett sent a response to HHS's Instruction Letter. In the letter, Hargrett acknowledged receipt of the Instruction Letter and its accompanying forms. (*Id.*, Exh. I). Hargrett informed HHS that

due to his disability and his economic situation, finding a doctor to complete the Disability Form was proving difficult. (*Id.*)

In a second letter dated August 9, 2004, Hargrett provided some documentation of his disability. He attached a letter from a retired University of Illinois at Chicago counselor who counseled Hargrett sometime in the mid- to late-1980's when he was a student. The letter stated that Hargrett "never fully recovered from his medical school obstacles" and appears to have a total and permanent disability. (*Id.*, Exh. G).

Since August 2004, Hargrett has sent HHS and the Court numerous letters indicating that he is a registered client of HHS in Illinois, he is near bankruptcy, he has attempted to make appointments with doctors to document his disability, and he has had a stress attack stemming from his disability. (*Id.*, Exh. K). Additionally, in an October 5, 2004 letter that Hargrett sent to the Court, he acknowledged that his application is incomplete and stated that he would present his completed application for discharge to HHS "in the next three to four months." Yet, there is no evidence that the application was submitted and he therefore remains ineligible for consideration of the discharge of his HEAL debt.

Almost twenty years have passed since Hargrett received his HEAL loan. He can no longer avoid judgment and repayment of the debt. The Court is unsure why Hargrett refused to enter into a

structured repayment plan, which would have been responsive to his financial situation and other needs. There are well-defined exceptions for discharge, and Hargrett does not qualify in any category. Hargrett is aware of the disability application and the information is readily available to the public. Yet, more than two years have passed and Hargrett still has not filed enough documentation for disability consideration by HHS. None of Hargrett's documents qualify as the required Disability Form or his *complete* medical records; his submissions are all untimely and insufficient.

According to HHS policy, collection activity must resume by the holder, who is HHS, after either the sixty-day period or the thirty-day additional period passes. (Blum Aff. ¶ B(7)f). Hargrett tendered his incomplete submissions well beyond the sixty-day initial window. Even if the Court afforded Hargrett another thirty days of stayed collection after his first submission on April 23, 2004, that window of time is long gone. HHS policy states that Hargrett can continue to seek disability discharge post judgment (*see id.* ¶ B(6)), and that is the path he must now embark upon if he attempts to seek relief from repayment of the HEAL loan. If he is ever found to be permanently and totally disabled by HHS, then payments made on the loan will be returned at that time.

The Court recognizes that *pro se* Defendant is not a lawyer and that he does not fully understand the relevant body of law, which

includes the United States Code, Code of Federal Regulations, and HHS policies. Hargrett argues that the collection process on his loan is illegal (seemingly related to forbearance and deferment procedures), but presents no evidence to indicate any such illegality on the part of HHS or the United States. He also argues that HHS's information is inaccurate, but provides no contrary documentation. Further, he claims that he recently filed for bankruptcy, but the Court has no proof of such filing.

### III. **CONCLUSION**

Hargrett is not currently under consideration for discharge of his HEAL loan and there are no other salient factors before the Court preventing the collection on the debt. Accordingly, the Court must **grant** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: August 11, 2005